## Koenig's Estate.

*Wages—Preference—Decedents' estates—Acts of April 9, 1872, June 13, 1883, and May 12, 1891.*

1. The Act of April 9, 1872, P. L. 47, and its amendments of June 13, 1883, P. L. 116, and May 12, 1891, P. L. 54, provide a lien for wages to mechanics, employees, servants and others in like capacity. Where one is engaged in a business which does not confine his dealings or activities to one person or firm, but may extend to an unlimited number of persons, and receives a fixed amount from each for the services rendered, he cannot be regarded as an employee or servant within the meaning of the act.

2. A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such services remains entirely under the control and direction of the latter.

Claim for salary. O. C. Berks Co.

*Rothermel & Mauger*, for claimant; *E. D. Trexler*, for accountant.

SCHAEFFER, P. J., Oct. 22, 1921.—W. W. Prutzman also presented a claim for $80 due him as "salary" for services rendered to decedent for a period of eight weeks, beginning in September, 1920, and ending Oct. 30, 1920, at $10 per week. Claimant contends that this is a preferred claim, because the

amount of salary claimed is owing to him for services which, under the Act of May 12, 1891, P. L. 54, are given a preference in the distribution of decedents' estates.

Objection has been made both to the validity of the claim and the allowance of it as a preferred claim, if it should be determined that it has been proved.

It appears that the decedent was conducting a number of moving-picture theatres during her lifetime, and that, at the time of her death, her business had dwindled down to the operation of one theatre, known as the Euclid Theatre, located in Schuylkill Haven. It was the duty of the claimant to see that this theatre was supplied with the necessary picture films. He went to Philadelphia every day and selected the features for it and for two other theatres in the city not under her control or ownership. His business was to select the picture reels for these theatres and attend to the shipment and delivery of them to the different theatres. He was known as a "booker" or "messenger," and his duties were limited to the selection of the reels for the various theatres and seeing to their prompt shipment. He had no other connection with decedent's business, nor did he render any service in or about the property in which said business was conducted. For booking the shows for this particular theatre, the Eucild, he received $10 per week from the decedent.

That the amount of $80 is still due and owing to the claimant by this estate seems to be established by the evidence. The check-book of the decedent shows that it was her custom to pay him weekly by check, and that the last payment made to him was sometime prior to September, 1920. One of the witnesses also testified that decedent said shortly before her death that "I must fix him up; it's a shame, . . . and that Prutzman comes next." This testimony, in connection with the fact that latterly decedent was unable to pay any bills and was hopelessly insolvent, as shown by the number of claims presented here and the amount for distribution, convinces us that the claim is a just one.

The objection, however, that this is not a preferred claim must be sustained. The claimant, in order to be entitled to a preference, must show that he is one of the persons, or belongs to a class, embraced within the protection of the act of assembly giving such preferences.

The Act of May 12, 1891, P. L. 54, is an amendment of the Act of June 13, 1883, P. L. 116, which was an amendment of the Act of April 9, 1872, P. L. 47, and provides as follows: "All moneys that may be due or hereafter become due for labor and services rendered by any miner or mechanic, servant girl at hotels, boarding-houses, restaurants or in private families, or any other servant and helper in and about said houses of entertainment and private families, porter, hostler or any other person employed in and about livery stables or hotels, laundryman or washer-woman, seamster or seamstress employed by merchant tailors or by any other person, milliner, dressmaker, clothier, shirtmaker or clerk employed in stores or elsewhere, hand laborer, including farm laborer or any other kind of laborer, printer, apprentice, and all other tradesmen hired for wages or salary from any person or persons, chartered company, joint stock company, limited partnership or other partnership, either as owner, lessee, contractor or under-owner, whether at so much *per diem* or otherwise, for any period not exceeding six months preceding the sale or transfer of the real or personal property, works, mines, manufactories, or business or other property connected therewith in carrying on the sale of said person or persons, chartered company, joint stock company, limited partnership or other partnership, by execution or otherwise, on

1 D. & C.

account of the death or insolvency of such employer or employers, shall be a lien upon said real or personal property. . . ."

The said Act of 1891 does not embrace all kinds of services which may be rendered by one person to another, but confines its operation to a certain class of persons or employees enumerated therein and to their corresponding classes of employers. As was said by Mr. Chief Justice Fell in Mulholland v. Wood, Brown & Co., 166 Pa. 486: "The Act of May 12, 1891, P. L. 54, is an amendment of the Act of June 13, 1883, P. L. 116, which is an amendment of the Act of April 9, 1872, P. L. 47. Each successive act enlarges the number of persons intended to be benefited. The first act included but four classes, the second twenty-three, and the third twenty-five."

The claimant has not clearly indicated to us the class in which he contends his case can be included, but has made the general argument that because he received $10 per week "salary," he must be regarded as an employee of some kind, and, consequently, is entitled to the benefits of the act.

The mere fact that claimant received a "salary" for certain services performed by him does not bring him within the meaning of the act, if he fails to show that he belongs to one of the classes of persons enumerated therein. One who claims its benefits must bring himself clearly within its terms: Carey v. Lameroux, 22 Pa. Superior Ct. 560.

We do not see how the business of a "booker" or "messenger," which the claimant carried on and out of which his claim against this estate arose, can in any way be regarded as falling within the provisions of this act. The line of work which he performed, if it be conceded, *arguendo*, that he was employed by the decedent, is not covered by the language of the statute. None of the terms defining the classes of person entitled to the benefits of the act includes the business or relationship which the claimant says he sustained to the decedent. "Bookers" and "messengers" are a distinct class of employees, and are not covered by the act. When the Act of 1891 was passed, the moving-picture business was in embryo, and, consequently, the legislature could not have intended to extend the preferences to persons or a class of which it had no knowledge.

Again, this act undoubtedly contemplates that the relationship of master and servant, or employer and employee, must exist before its provisions can be invoked.

In this case the claimant was not only booking shows and attending to the shipping of the films for the decedent's theatre, but was also doing the same thing for two other theatres, for which he received a stipulated amount. In other words, he was not in the exclusive employ of the decedent, and dependent solely upon his employment by her for a livelihood. While it is true that in or about September, 1920, he was supplying the films for only three theatres, yet the evidence shows that at one time he had numerous theatres for which he secured the films, and that his business was that of selecting and providing films for theatres of different owners at a certain amount per week for each theatre. It seems to us that when one is engaged in a business which does not confine his dealings or activities to one person or firm, but may extend to an unlimited number of persons, and receives a fixed amount from each for the services rendered, he cannot be regarded as an employee or servant within the meaning of the act. "A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter. The relation of master and servant exists where the employer has the right to select the employee, the power to remove

Koenig's Estate.

and discharge him, and the right to direct both what work shall be done and the manner in which it shall be done:" McColligan v. Pennsylvania R. R. Co., 214 Pa. 229, 232. The claimant was undoubtedly engaged in a distinct and independent business. The claim is not preferred, and will, therefore, prorate in the fund with the common claims.

From Wellington M. Bertolet, Reading, Pa.